[Cite as *State v. Lammers*, 2021-Ohio-1518.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF OAKWOOD | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28853 |
| | : | |
| v. | : | Trial Court Case No. TRD1901620 |
| | : | |
| GRETCHEN LAMMERS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of April, 2021.

. . . . . . . . . . .

ROBERT F. JACQUES, Atty. Reg. No. 0075142, City of Oakwood Prosecutor's Office, 30 Park Avenue, Dayton, Ohio 45419
        Attorney for Plaintiff-Appellee

JOHN K. LIMOLI, Atty. Reg. No. 0058551, 1402 Sunset Drive, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Gretchen Lammers was convicted on her proposed no contest plea to attempted leaving the scene of an accident, a misdemeanor of the second degree. The trial court imposed a fine of $750 and court costs.

{¶ 2} Lammers appeals from her conviction, claiming that (1) the prosecutor's statement of facts was insufficient to support her conviction, (2) her attorney rendered ineffective assistance by failing to assert that her speedy trial rights had been violated, and (3) the trial court erred in finding her guilty because she neither had a trial nor entered a no contest plea. The City of Oakwood concedes error as to Lammers' third claim, and it acknowledges that Lammers' first claim is rendered moot as a result. We agree with the City's assessment and further conclude that Lammers' second claim has merit. For the following reasons, the trial court's judgment of conviction will be vacated.

## I. Facts and Procedural History

{¶ 3} Shortly after 9:00 p.m. on October 6, 2019, Lammers crashed her vehicle on West Schantz Avenue in Oakwood. Lammers walked away, but did not go very far before she was stopped by University of Dayton police officers, who returned her to the scene. Lammers seemed disoriented, and it was not clear that she intended to leave the scene.

{¶ 4} After an investigation, Oakwood police officers issued citations for leaving the scene of an accident (also called failure to stop), in violation of Oakwood Codified Ordinances 335.12, a misdemeanor of the first degree; driving under suspension, in violation of Oakwood Codified Ordinances 335.072, an unclassified misdemeanor; failure to control, in violation of Oakwood Codified Ordinances 331.34, a minor misdemeanor;

and operating a motor vehicle without a valid license, in violation of Oakwood Codified Ordinances 335.01, an unclassified misdemeanor. The summons for theses offenses was served on Lammers on October 11, 2019, and the traffic citations were filed in the municipal court four days later, on October 15.

{¶ 5} Lammers also was charged in Oakwood Municipal Court under a different case number with two felony counts of operating a vehicle while under the influence of drugs or alcohol, in violation of R.C. 4511.19, arising from the same incident. *State v. Lammers*, Oakwood M.C. No. 19 CRA 73.

{¶ 6} The traffic citations summoned Lammers to appear in Oakwood Municipal Court on October 17, but she failed to appear. The trial court issued a bench warrant and set bond at $1,500. Lammers was arrested by Kettering police officers later that day, and she appeared for arraignment from the Montgomery County Jail. Lammers pled not guilty to each of the charges. The trial court scheduled a preliminary hearing for October 25 and a pretrial conference for November 7, 2019. The court also set a blanket bond for both the misdemeanor and felony OVI cases. Lammers did not post bond.

{¶ 7} Lammers was indicted on the two felony OVI charges, and the State's prosecution of those offenses proceeded in the Montgomery County Court of Common Pleas. *State v. Lammers*, Montgomery C.P. No. 2019-CR-3355. The misdemeanor charges brought by the City continued in Oakwood Municipal Court. Lammers remained in jail on the pending misdemeanor charges.

{¶ 8} On November 7, 2019, the Oakwood prosecutor filed a document summarizing the results of the pretrial conference held that day. The prosecutor asked

that a second pretrial conference be scheduled for the following reason: "30 days out. Court still appointing counsel on related felonies, case not ripe for PT yet." The record suggests that Lammers was represented by an assistant public defender, but it is unclear when counsel was appointed; defense counsel did not sign the prosecutor's pretrial results document.

{¶ 9} Five days later, on November 12, the trial court filed an entry, stating "at request of Defendant, 60 day extension. Second PTC [pretrial conference] to be set." Later that day, the court scheduled the second pretrial conference for January 9, 2020.

{¶ 10} On December 10, 2019, Lammers was convicted on one OVI count, a fourth-degree felony, in Case No. 2019-CR-3355. The common pleas court imposed up to five years of community control with conditions that included serving 60 days in jail (with 54 days of jail time credit) and completion of the Secure Transitional Offender Program (STOP), a 30- to 90-day secure residential drug and alcohol intervention program.

{¶ 11} On December 12, 2019, the trial court received correspondence from Terri Hawk, Manager of Transitional Programs, Montgomery County Division of Criminal Justice Services/STOP, asking the municipal court to consider releasing Lammers from jail to STOP. The correspondence informed the trial court that Lammers had received community control in her felony OVI case (Case No. 2019-CR-3355) with the condition that she enter and successfully complete STOP, in lieu of a 180-day community residential sanction in jail.

{¶ 12} The trial court granted the request. The court amended Lammers' bond to provide her release from the jail to the Montgomery County Sheriff for transportation to

STOP, and it ordered that Lammers be returned to the jail upon her completion of the program. The trial court also continued the January 9, 2020 pretrial conference and indicated that the conference would be rescheduled upon notification of Lammers' completion of STOP.

{¶ 13} In March 2020, the trial court scheduled the pretrial conference for May 14, 2020. A week later, a public defender filed a notice of appearance as trial counsel for Lammers.

{¶ 14} On May 14, 2020, the prosecutor filed a document summarizing the results of the May 14 pretrial conference. He indicated that the parties had agreed to a plea to the charge of leaving the scene, a misdemeanor of the first degree, with the remaining counts being dismissed. The entry further stated that defense counsel would fax a time waiver and that disposition would be set for late June or early July, because Lammers would be in the STOP program through mid-June. Lammers signed a waiver of her speedy trial rights, and that document was filed on May 14, 2020. Defense counsel also completed and signed a "time waiver" for Lammers and filed that document on May 18, 2020.

{¶ 15} Another pretrial conference was held on June 18, 2020. The prosecutor's "Pre Trial Results" summary stated that the parties had agreed to a no contest plea to an amended charge of attempted leaving the scene, a misdemeanor of the second degree. The document noted that the prosecutor would need to state the circumstances of the offense on the record at the plea hearing.

{¶ 16} The same day (June 18), following the pretrial conference, the trial court held a plea hearing. The court expressed its understanding that Lammers would be

entering a no contest plea to attempted leaving the scene, a second-degree misdemeanor. After a short pause while waiting for the prosecutor to appear, the court told Lammers that she faced a maximum sentence of 90 days in jail, a $750 fine, and a period of supervision. The court asked Lammers if she understood that she would not have a trial, and Lammers responded that she did. The trial court next asked defense counsel if he believed that Lammers understood the nature of the plea agreement and was prepared to accept it. Defense counsel replied, "Yes."

{¶ 17} The court then asked the prosecutor to provide a statement of the facts, which he did. After the prosecutor completed his statement, defense counsel told the court that Lammers had served 60 days in jail, attended the STOP program for 50 days, was in aftercare, and was sober. Lammers clarified that she had been sober for 8 months and three days. The trial court congratulated Lammers, noted that Lammers had not had a valid license since 2009, and told her that it would "accept her guilty plea." The court dismissed the remaining charges and imposed a $750 fine and court costs.

{¶ 18} Lammers appeals from her conviction, raising three assignments of error.

## II. Defects in the Plea Hearing

{¶ 19} Lammers asserts that her plea hearing was defective in two respects. In her first assignment of error, she claims that the prosecutor's statement of the facts was insufficient to support a finding of guilt. In her third assignment of error, she claims that the trial court erred in convicting her, because she did not enter a plea or have a trial. The City concedes error as to the third assignment of error and argues that the first assignment of error is moot. We agree.

{¶ 20} "A judge's duty to a defendant before accepting his [or her] guilty or no

contest plea is graduated according to the seriousness of the crime with which the defendant is charged." *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25. Here, the parties agreed to a reduced charge of attempted leaving the scene, a misdemeanor of the second degree. Lammers thus faced a maximum possible jail sentence of 90 days in jail and a fine of $750. *See* Oakwood Codified Ordinances 303.99(b). Lammers' offense was a "petty offense," which means "an offense for which the penalty prescribed by law includes confinement for six months or less." Traf.R. 2(D).

{¶ 21} When a defendant enters a guilty or no contest plea in a traffic misdemeanor case involving a petty offense, the plea is governed by Traf.R. 10(D), which provides:

> In misdemeanor cases involving petty offenses, except those processed in a traffic violations bureau, the court may refuse to accept a plea of guilty or no contest and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty. This information may be presented by general orientation or pronouncement. The counsel provisions of Criminal Rule 44(B), (C) and (D) apply to this subdivision.

*Accord* Crim.R. 11(E) ("In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.").

{¶ 22} Traf.R. 10(B), which defines "the effect of guilty or no contest pleas," states that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Traf.R.

10(B)(2); *see also* Crim.R. 11(B)(2), which is identical to Traf.R. 10(B)(2).

{¶ 23} Misdemeanor pleas are also governed by R.C. 2937.07. With respect to no contest pleas, that statute reads:

A plea to a misdemeanor offense of "no contest" or words of similar import shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense. * * * If a finding of guilty is made, the judge or magistrate shall impose the sentence or continue the case for sentencing accordingly. A plea of "no contest" or words of similar import shall not be construed as an admission of any fact at issue in the criminal charge in any subsequent civil or criminal action or proceeding.

{¶ 24} The government bears the burden of ensuring that an explanation of circumstances appears on the record before a conviction is entered. *State v. Schornak*, 2015-Ohio-3383, 41 N.E.3d 168, ¶ 8 (2d Dist.). However, it is immaterial who actually states the explanation on the record. *Id.* Regardless of who states the explanation of circumstances, the record must affirmatively demonstrate that a sufficient explanation of circumstances was made. *Id.*; *Centerville v. Nagle*, 2d Dist. Montgomery No. 28639, 2020-Ohio-2849.

{¶ 25} In this case, the trial court began the plea hearing by confirming with defense counsel that the parties had reached an agreement whereby Lammers would plead no contest to attempted leaving the scene, a misdemeanor of the second degree. The court informed Lammers of the maximum sentence that she faced and asked her if

she understood that she would not have a trial. The trial court asked defense counsel, not Lammers, if Lammers understood the nature of the plea and was prepared to accept it. The court did not inform Lammers of the effect of a no contest plea, as required by Traf.R. 10(D). Moreover, the trial court did not ask Lammers if she wished to enter a no contest plea, and Lammers did not tell the trial court that she wanted to do so. The trial court thus erred in finding Lammers guilty on a no contest plea to attempted leaving the scene of an accident. In light of this conclusion, any error in the trial court's finding of guilt based on the prosecutor's explanation of the circumstances is moot.

{¶ 26} Lammer's third assignment of error is sustained. Her first assignment of error is overruled as moot.

### III. Ineffective Assistance/Speedy Trial

{¶ 27} In her second assignment of error, Lammers claims that her trial counsel rendered ineffective assistance by failing to move for dismissal of the charges on speedy trial grounds.

{¶ 28} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d

516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 689.

{¶ 29} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Ohio's speedy trial statute, R.C. 2945.71, "was implemented to incorporate the constitutional protection of the right to a speedy trial." *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996). Accordingly, the speedy trial statutes must be strictly construed against the government. *Id.*

{¶ 30} R.C. 2945.71 designates specific time requirements for the government to bring an accused to trial. A person charged with a first-degree misdemeanor must be brought to trial within 90 days after the person's arrest or service of summons. R.C. 2945.71(B)(2). When charges of different degrees arise out of the same act or transaction, the defendant "shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged." R.C. 2945.71(D). When a defendant enters a plea, rather than proceeds to trial, the plea hearing must occur within the speedy trial deadline. *See State v. Madden*, 10th Dist. Franklin No. 04AP-1228, 2005-Ohio-4281, ¶ 28.

{¶ 31} Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). "When multiple charges arise from a criminal incident and share a common litigation history, pretrial incarceration on the multiple charges constitutes incarceration on the 'pending charge' for the purposes of the triple-count provision of the speedy-trial statute, R.C. 2945.71(E)." *State v. Parker*,

113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, paragraph one of the syllabus. "Criminal charges arising out of the same criminal incident and brought simultaneously will always be deemed to have a 'common litigation history' for the purposes of establishing incarceration solely on the 'pending charge' within the meaning of R.C. 2945.71(E), even if they are prosecuted in separate jurisdictions." *Id.* at paragraph two of the syllabus.

{¶ 32} A defendant can establish a prima facie case for a speedy trial violation by demonstrating that the trial was held past the time limit set by statute for the crime with which the defendant is charged. *State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-4549, ¶ 15. "If the defendant can make this showing, the burden shifts to the State to establish that some exception[s] applied to toll the time and to make the trial timely. If the State does not meet its burden, the defendant must be discharged. R.C. 2945.73." *Id.*

{¶ 33} The time within which a defendant must be brought to trial may be extended only for the reasons specifically enumerated in R.C. 2945.72. *State v. Brewer*, 2d Dist. Montgomery Nos. 22159, 22160, 2008-Ohio-2715, ¶ 37, citing *State v. Palmer*, 84 Ohio St.3d 103, 702 N.E.2d 72 (1998). Those reasons include any period of delay necessitated by any motion filed by the defendant, "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72 (E), (H).

{¶ 34} Sua sponte continuances fall within continuances "granted other than on the accused's own motion." R.C. 2945.72(H). When continuing a case sua sponte, the trial court must enter the order of continuance and the reasons for the order by journal

entry prior to the expiration of the time limits prescribed in R.C. 2945.71 for bringing a defendant to trial. *State v. Ramey*, 2012-Ohio-6187, 986 N.E.2d 462, ¶ 12 (2d Dist.); *State v. Mincy*, 2 Ohio St.3d 6, 9, 441 N.E.2d 571 (1982). "The journalization of reasons is necessary to permit the appellate court to determine whether, on the accused's claim that his statutory speedy trial rights were violated, the period of delay resulting from the sua sponte continuance was nevertheless 'reasonable.' R.C. 2945.72(H)." *Ramey* at ¶ 13.

**{¶ 35}** Lammers was charged with four misdemeanors: a misdemeanor of the first degree, two unclassified misdemeanors, and a minor misdemeanor. Pursuant to R.C. 2945.71(D), all of Lammers' misdemeanor charges were subject to the 90-day speedy trial deadline. We note that the parties agree that Lammers was required to be tried within 90 days; neither party asserts that the existence of the felony OVI case arising from the same incident affected Lammers' speedy trial time.

**{¶ 36}** The relevant events are summarized in the following table:

| Date | Event |
|---|---|
| October 6, 2019 | Date of incident |
| October 11, 2019 | Summons personally served on defendant |
| October 15, 2019 | Charges filed in Oakwood Municipal Court |
| October 17, 2019 | Defendant failed to appear; arrested same day |
| October 18, 2019 | Arraignment – held on $5,000 bond |
| October 23, 2019 | $10,000 bond set on OVI case (19 CRA 73) |
| November 7, 2019 | 1st pretrial conference (PTC) |

| November 12, 2019 | Trial court grants 60-day continuance at defendant's request; 2nd PTC set for Jan 9, 2020 |
|---|---|
| December 10, 2019 | Defendant sentenced in felony case |
| December 12, 2019 | Trial court releases defendant from jail to STOP program; trial court continues Jan 9, 2020 PTC until defendant completes STOP |
| December 16, 2019 | Defendant transported to STOP (max release date is Mar 14, 2020) – *see* Case No. 19-CR-3355 |
| Mar 24, 2020 | Trial court schedules PTC for May 15 |
| May 14, 2020 | PTC held; Defendant signs/files time waiver |
| May 18, 2020 | Defense counsel files time waiver |
| June 18, 2020 | PTC, Plea Hearing, Sentencing |

Based on this timeline, 250 days elapsed between the issuance of the summons to Lammers and her plea hearing. Accordingly, the City bears the burden of demonstrating that exceptions applied to toll the time and that Lammers' plea hearing occurred within the 90-day time limitation.

{¶ 37} On this record, Lammers' speedy trial time began to run on October 12, 2019, the day after she was served with the summons on the misdemeanor charges. *Accord, e.g., State v. Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 16 ("When computing speedy trial time, the day of arrest is not counted."). The speedy trial time ran on a one-for-one basis until October 17, the day she failed to appear and was arrested on the charges. Five days elapsed during this period. Lammers does not receive credit for the day she absconded and was arrested.

{¶ 38} From October 18 until November 12, a period of 25 days, Lammers was

being held in jail in lieu of bail on the pending misdemeanor charges. Lammers also was being held on the felony OVI charges, which were brought by the State under a different case number. We note that neither party argues that the felony OVI charges, which arose from the same incident and were filed on the same day as the misdemeanor charges, should be considered part of the "pending charge" for purposes of R.C. 2945.71(E), the triple-count provision. *See Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032. Stated simply, neither Lammers nor the City suggests that the triple-count provision applied during this period. We will accept, for purposes of this case, that the time from October 18 until November 12 counted as 25 speedy trial days.

{¶ 39} On November 12, 2019, the trial court granted a 60-day continuance, apparently at Lammers' request, and scheduled a pretrial conference for January 9, 2020. The record does not include a motion for a continuance, and the prosecutor's summary of the November 7 pretrial conference did not reference a request for a continuance by Lammers. Nevertheless, based on the trial court's entry, the delay until January 9 was chargeable to Lammers and did not count toward her speedy trial time.

{¶ 40} Prior to the expiration of the requested continuance, the manager of Transitional Programs contacted the trial court and requested that Lammers be released from jail to STOP. The court granted this request on December 12, 2019. In conjunction with that order, the trial court continued the scheduled January 9, 2020 pretrial conference and stated that the conference would be rescheduled upon notification that Lammers had completed STOP. The trial court filed its next entry on March 24, scheduling a pretrial conference for May 15, 2020

{¶ 41} The City argues that the 102-day period between December 12, 2019 and

March 24, 2020 should not count toward Lammers' speedy trial time, stating:

> * * * [T]he December 12, 2019 journal entry makes it clear that the continuance was requested by personnel from the S.T.O.P program; that the Defendant-Appellant's participation in the program was required as part of the sanctions imposed in her related felony case; and that the Defendant-Appellant's misdemeanor case would resume as soon as she notified the court of her completion of the S.T.O.P. program. In other words, the December 12, 2019, journal entry makes it abundantly clear that the delay, while not directly requested by the Defendant-Appellant, was both reasonable and intended for Defendant-Appellant's benefit. It also fits cleanly within subsection (H) of R.C. 2945.72, which provides for tolling when a reasonable continuance is made other than upon the request of the accused.

{¶ 42} We disagree with the City's contention. At the outset, nothing in Hawk's letter suggested, much less requested, a continuance of the misdemeanor case. The letter simply requested that Lammers be released from jail to STOP. Lammers did not file a motion for a continuance in December 2019, and there is nothing in the record that could be construed as such a request. Rather, the trial court sua sponte continued the misdemeanor case until Lammers completed the STOP program.

{¶ 43} The trial court did not expressly provide reasons for the continuance, but the court's December 12 order suggests that the continuance was based solely on Lammers' participation in STOP. However, nothing in the record indicates that Lammers could not have participated in pretrial conferences and other hearings in this case, just as

if she instead were serving the alternative 180-day community residential sanction in jail, and we are not aware of anything specific to the STOP program that would have precluded Lammers from attending the January 9, 2020 pretrial conference and other hearings in this case.

{¶ 44} In addition, it does not necessarily follow that the continuance was to Lammers' benefit. We have noted that "[t]ime spent in a half-way house or other 'facility where one's ability to leave whenever he or she wishes is restricted may be confinement' for purposes of jail-time credit." *State v. Bennett*, 2d Dist. Greene No. 2014-CA-17, 2014-Ohio-4102, ¶ 9, quoting *State v. Osborne*, 5th Dist. Richland No. 2009CA0119, 2010-Ohio-4100, ¶ 14. Here, Hawk informed the trial court that Lammers would receive jail time credit for her time spent at STOP. By continuing Lammers' case until she completed STOP, the trial court removed the possibility that any jail sentence that the court imposed in this misdemeanor case could be served concurrently with her confinement in the felony case.

{¶ 45} Finally, the City has not directed us to any statute, other than R.C. 2945.72, that affects the tolling of Lammers' speedy trial rights in this case, and we have found none. *Contrast* R.C. 2941.401 (request by a prisoner for trial on pending charges). On the record before us, we conclude that the trial court's sua sponte continuance of Lammers' case, at least from January 10, 2020 (after the 60-day continuance requested by Lammers) until May 14, 2020 (the date of Lammers' speedy trial waiver) was unreasonable. This time amounted to 124 days.

{¶ 46} Lammers filed a speedy trial waiver on May 14, 2020. However, Lammers' speedy trial time had already expired when that waiver was filed.

{¶ 47} We note that the City has provided an alternate calculation of Lammers' speedy trial time. It asserts that only the periods from October 15, 2019 (when the traffic citations were filed) through November 7 (the first pretrial conference) and from March 24, 2020 (the court's entry setting a pretrial conference date) through May 14, 2020 (a pretrial conference) were chargeable to the City. The City thus asserts that only 74 days counted toward Lammers' speedy trial time. For the reasons stated above, we find the City's calculation to be unpersuasive.

{¶ 48} Because we conclude that Lammers' speedy trial time expired prior to the June 18, 2020 plea and sentencing hearing, we further conclude that Lammers' counsel acted deficiently when he failed to move for a dismissal on speedy trial grounds. We find no reasonable trial strategy for failing to do so. In addition, given that the violation of her speedy trial rights entitled her to a dismissal of the charges, we conclude that there was a reasonable probability that the outcome of the case would have been different had defense counsel filed such a motion.

{¶ 49} Lammers' second assignment of error is sustained.

### IV. Conclusion

{¶ 50} Based on our finding that the violation of Lammers' speedy trial rights entitled her to a dismissal of the charges, the trial court's judgment of conviction will be vacated.

. . . . . . . . . . . . .


DONOVAN, J. concurs.

WELBAUM, J., concurs in part and dissents in part:

{¶ 51} Although I agree with the majority's resolution of the third assignment of error, and that this resolution renders the first assignment of error moot, I very respectfully dissent regarding its decision to sustain the second assignment of error and vacate the judgment.    Instead, I would remand the case to the trial court for further proceedings.

{¶ 52} Given that trial counsel is granted a strong presumption of effectiveness, wide latitude, perspective at the time without benefit of hindsight, and debatable, yet allowable strategies, there is insufficient evidence in this record to conclude that Lammers' counsel was ineffective.    *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley,* 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373.    Consequently, since Lammers failed to sustain her burden of proof on this issue, I would overrule the second assignment of error.

{¶ 53} The record indicates that Lammers was represented by the public defender's office from November 12, 2019, until she was sentenced.    On November 12, 2019, the trial court noted that Lammers had requested a 60-day continuance and copied a specific attorney with the notice of the next hearing.   The letter from the STOP residential treatment program requesting Lammers' release on December 12, 2019, also was copied to the same attorney.   Furthermore, on the same day, the trial court copied this attorney with the order releasing Lammers to the STOP program.

{¶ 54} On March 24, 2020, the court copied the same attorney with the hearing notice of the May 14, 2020 pretrial conference.   On March 31, 2020, a second attorney On May 14, 2020, the court copied the pretrial conference order to the first attorney, and the prosecutor's note on the "PRE TRIAL RESULTS" form indicated that the first attorney would fax a time waiver.   The first attorney then appeared at the final pretrial conference

and change of plea proceedings on June 18, 2020.

{¶ 55} Lammers' second assignment of error claims that her trial counsel rendered ineffective assistance of counsel by failing to move for dismissal of the charges on speedy trial grounds. As stated, the issue is whether there was ineffective assistance of counsel. However, Lammers waived the speedy trial issue as a direct assignment of error by failing to raise it in the trial court. *State v. Taylor*, 2d Dist. Montgomery No. 28463, 2020-Ohio-3481, ¶ 32, citing *State v. Humphrey,* 2d Dist. Clark No. 02-CA-85, 2003-Ohio-2825, ¶ 17, and *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7071, 781 N.E.2d 72, ¶ 37.

{¶ 56} To avoid this barrier, Lammers now contends that trial counsel was ineffective in failing to raise a speedy trial violation in the trial court. *See State v. Jenkins*, 2d Dist. Clark No. 2017-CA-85, 2019-Ohio-2249, ¶ 9. Lammers thus carries the burden to overcome the strong presumptions of effectiveness of trial counsel. However, she has failed to demonstrate ineffectiveness on the current record.

{¶ 57} I agree with the majority that the speedy trial issue is relevant to the ineffective assistance of counsel claim. If the record demonstrates that no speedy trial violation existed, the assignment of error must be overruled. On the other hand, if an actual or possible speedy trial violation exists, further analysis is required. On the first level of analysis, I believe no apparent speedy trial violation existed.

{¶ 58} I believe only 80 days of the allowable 90 days of speedy trial time had likely elapsed before the plea change on June 18, 2020. First, Lammers absconded one day, which does not count against the City (1 day). The 60-day continuance requested by Lammers, from November 12, 2019, to January 9, 2020, is also not counted (59 days).

Furthermore, the time from the January 9, 2020 pre-trial to the March 24, 2020 order setting another pre-trial should not be counted (75 days). Specifically, on December 12, 2020, the trial court had ordered that the next pre-trial would be rescheduled upon notification that Lammers had completed STOP.

{¶ 59} No such notice having been filed by March 24, 2020, the trial court ordered the next pre-trial conference to be held on May 14, 2020. On May 14, 2020, Lammers attended the pretrial conference and signed a time waiver. That day, the pretrial conference report noted that Lammers' counsel would fax a time waiver. On May 18, Lammers' counsel also filed an executed waiver. Disposition was then held on June 18, 2020. I would toll the time from May 14 to June 18 (35 days).

{¶ 60} Of the 250 total number of days from the service of summons on October 11, 2019, to the change of plea on June 18, 2020, I believe 170 days were tolled (1 + 59 + 75 + 35 = 170 days tolled; 250 – 170 = 80 days). In contrast, the majority concludes that as of the dates Lammers and her counsel waived time on May 14 and 18, 2020, the speedy trial time had already expired.

{¶ 61} The majority finds that the speedy trial time from January 9, 2020 (when the 60-day continuance granted on November 12 expired) to March 24, 2020, should be charged to the City. As support, the majority reasons that Lammers did not request the continuance the court granted on December 12, 2020, for her to attend STOP.

{¶ 62} However, the speedy trial statute provides that the time shall be tolled when necessitated by "[t]he period of any *reasonable* continuance granted *other than by the accused own motion.*" (Emphasis added.) R.C. 2945.72(H). Notably, by definition, this section does not involve requests from the defendant. Instead, it only requires that

the request be reasonable and that it be other than by a defendant's motion.

{¶ 63} While the reasons for the *sua sponte* continuance under this subsection need not be specifically stated, they must be otherwise affirmatively evident from the existing record. *State v. Ramey* 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 33. Here, the reasons the trial court continued Lammers' case are clearly evident from the record.

{¶ 64} The request of a third party pre-trial services officer has been found to be reasonable, thereby tolling the speedy trial clock. In *United States v. Hohn*, 8 F.3d 1301 (8th Cir.1993), the defendant was charged with drug offenses and was clearly addicted when he relapsed during pretrial release and then was re-incarcerated. *Id.* at 1303. At that point, a pretrial services officer, a third party, filed a petition for action on conditions of pretrial release. *Id.* As applicable, the federal Speedy Trial Act, 18 U.S.C. 3161, provided that "[t]he following periods of delay shall be excluded in computing the time within * * * which the trial of any such offense must commence: (1) [a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to – * * * (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. 3161(h)(1)(F).

{¶ 65} The Eighth Circuit Court of Appeals concluded that this part of the statute should not be interpreted narrowly, due to the inclusion of the words "including but not limited to." *Hohn* at 1304. In addition, the court found that a "pretrial services' petition for action on conditions of pretrial release is the functional equivalent of a motion to reconsider pretrial release, because both serve the same underlying purpose," and that

"*[a] nonparty to a criminal action* may initiate a delay excludable pursuant to § 3161(h)." (Emphasis added.) *Id.* at 1305. Thus, the court found that the time for resolving the defendant's remand to detention was not attributable to the government. *Id.*

{¶ 66} After being sent to detention, the defendant also filed a motion to reconsider detention, and based on the advice of pretrial services, the court conditionally sent him to a rehabilitation facility. *Id.* at 1306. On appeal, the court also held that the government should not be charged with the time the defendant was in detention, because "Subsection (F) excludes the period of time after a motion is submitted but before it is under advisement. * * * That is, subsection (F) excludes the period of time after a hearing in which the court record may remain open to receive further information. Here, the district court did not receive all the information necessary to determine the motion to reconsider detention until January 23, 1991, when Hohn completed drug treatment." *Id.*

{¶ 67} Although the facts in *Hohn* are not identical, it supports the City's argument that the delay was reasonable, for Lammers' benefit, and that the time was tolled under R.C. 2945.72(H). Furthermore, similar to 18 U.S.C. 3161(h)(1), R.C. 2945.72(H) allows tolling for "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted *other than* upon the accused's own motion." (Emphasis added.) In fact, Ohio's statute is even broader than the federal statute in this respect. Consequently, the time during which Lammers participated in the STOP program should be tolled on the City's behalf.

{¶ 68} The trial court's continuance also seems reasonable when compared to other situations that have been approved in Ohio to toll the speedy trial clock under R.C. 2945.72(H). For example, a judge's vacation or conference, a police officer's training or

vacation, and inclement weather have tolled speedy trial time. *State v. Montgomery*, 61 Ohio St.2d 78, 79, 399 N.E.2d 552 (1980) (rescheduling of grand jury proceeding due to unusual weather conditions); *State v. Lee*, 48 Ohio St.2d 208, 210, 357 N.E.2d 1095 (1976) (overcrowded docket and judge attending a conference); *State v. Matthews*, 10th Dist. Franklin No. 18AP-394, 2020-Ohio-5249, ¶ 23-26 (judge and bailiff on vacation); *State v. Saffell*, 35 Ohio St.3d 90, 91-92, 518 N.E.2d 934 (1988) (police officer's vacation); *State v. Pellettiere*, 2d Dist. Montgomery App. No. 21070, 2006-Ohio-1606, ¶ 5-6 (police officer's vacation); *State v. Williamson*, 5th Dist. Licking No. 2005 CA 00046, 2005-Ohio-6198 ¶ 35 (police officer's vacation); and *State v. Najjar-Banks*, 5th Dist. Delaware No. 18TRD 13628, 2019-Ohio-3337, ¶ 31-32 (police officer's training).

**{¶ 69}** Based on the preceding discussion, I would find that the 75-day delay should not be charged to the City. Consequently, Lammers and her counsel executed the time waivers before the time limits expired, thereby tolling an additional 35 days from May 14 to June 18. However, even if I am mistaken, the second assignment of error should still be overruled.

**{¶ 70}** The majority concluded that the delay was not necessary and should be charged against the City. In so doing, the majority abandoned the strong presumption of effectiveness of counsel by surmising the following facts not in the record:

> However, nothing in the record indicates that Lammers could not have participated in pretrial conferences and other hearings in this case, just as if she instead were serving the alternative 180-day community residential sanction in jail and we are not aware of anything specific to the STOP program that would have precluded Lammers from attending the

January 9, 2020 pretrial conference and other hearings in this case. *See* ¶ 43, above.

**{¶ 71}** The majority found this fact important. However, there is nothing in the record to support it. If this fact is pivotal, it is also unknown. It is equally likely that, unlike jails, secure residential drug treatment facilities require or very strongly encourage daily attendance with no interruptions in treatment. Perhaps as a trial strategy, Lammers' trial counsel were reasonably more concerned with continuity of treatment and compliance with felony court community control conditions than earlier attendance at a misdemeanor pretrial conference or plea hearing. Counsel could have reasonably strategized that the misdemeanor would likely "come out in the wash" of the related felony conviction or would be inconsequential in relative importance.

**{¶ 72}** When evaluating a speedy trial assignment of error, one must focus on the pendulum of time rather than, as presented here, whether Lammers has dispelled the strong presumption of effectiveness of trial counsel. We should not, in hindsight, dictate that counsel should have taken a narrow stopwatch view focused on the misdemeanor charges, when counsel may have reasonably determined that compliance with felony community control and successful completion of the court-ordered secure residential substance abuse treatment would be in the client's preferred global interest.

**{¶ 73}** So, even if one assumes that Lammers was available to attend proceedings in municipal court during the 75-day period, there are facts in the record that potentially weighed upon trial counsels' global view decisions while they navigated their client between the relative importance of effective treatment to comply with community control conditions imposed by the felony conviction versus timing for disposition of the

misdemeanors.

{¶ 74} We must be mindful that trial counsel is given wide latitude, and hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time. A debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields,* 2017-Ohio-400, 84 N.E.3d193, ¶ 38.

{¶ 75} Our prior ruling in *State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-4549, also illustrates the deficiency in Lammers' arguments. In that case, before his misdemeanor trial, Gray filed a motion to dismiss for violation of his right to a speedy trial. The trial court held a hearing, and Gray's trial attorney admitted during the hearing that she was unaware that the statutory time limit had run when she permitted Gray to waive his speedy trial rights. *Id.* at ¶ 21. We emphasized that "[m]ost importantly, however, the State does not dispute that the speedy trial time had run before Gray signed the waiver of his speedy trial rights on November 18, 2004." *Id.* at ¶ 19. As a result, we found ineffective assistance of counsel. *Id.* at ¶ 21.

{¶ 76} In contrast, in this case, we are presented with: (1) 75 days that should have been reasonably charged to Lammers to allow her compliance with felony community control conditions; (2) valid express waivers of time by Lammers and her counsel; (3) a waiver of the speedy trial assignment of error for failure to raise it in the trial court; and (4) an absence of facts substituted by supposition concerning why trial counsel made their decisions and concerning the availability or advisability of Lammers to attend a pretrial conference in municipal court during her secure residential treatment.

{¶ 77} Lammers could possibly develop the facts presently missing from the

record by either filing a motion to dismiss on remand prior to any conviction or by filing a post-judgment Civ.R. 60 motion for relief. *State v. McComb*, 2d Dist. Montgomery No. 26481, 2015-Ohio-2556, ¶ 24; *State v. Denihan*, 11th Dist. Ashtabula No. 2016-A-0003, 2016-Ohio-7443. ¶ 17-20.

**{¶ 78}** In a similar situation, the Eleventh District Court of Appeals stated that:

Although we acknowledge an alternative avenue for relief [Civ. R. 60], we find appellant's assignment of error to be without merit. This is based upon our determination that his claim for ineffective assistance of counsel is not appropriate for consideration on direct appeal from the municipal court when proof outside the record is necessary to support such claim.

*Denihan* at ¶ 20.

**{¶ 79}** Finally, Lammers has not demonstrated unreasonableness or prejudice. Despite this fact, in discussing these two matters, the majority concluded that:

In addition, it does not necessarily follow that the continuance was to Lammers' benefit. We have noted that "[t]ime spent in a half-way house or other 'facility where one's ability to leave whenever he or she wishes is restricted may be confinement' for purposes of jail-time credit." * * * Here, Hawk informed the trial court that Lammers would receive jail time credit for her time spent at STOP. By continuing Lammers' case until she completed STOP, the trial court removed the possibility that any jail sentence that the court imposed in this misdemeanor case could be served concurrently with her confinement in the felony case.

*See* ¶ 44, above. The majority found the continuance was not "necessarily * * * to Lammers' benefit" because of the possibility of lost jail credit at the misdemeanor sentencing. *Id.*

{¶ 80} I disagree for several reasons. First, potential benefit to the defendant is not mentioned in R.C. 2945.72(H). Also, this is evidently not an important consideration when assessing reasonableness. For example, continuances for judicial and police vacations and training do not necessarily benefit the accused but have been allowed under R.C. 2945.72 (H) to toll the speedy trial clock. Conversely, if benefit to the accused were an important consideration, it would support affirmance. We should recognize that Lammers evidently benefitted from the secure residential drug treatment because she and her counsel informed the trial court during the plea hearing that she was sober and employed. *See* Record of Plea Hearing, p. 6-7.

{¶ 81} Also, the majority's conclusion that the continuance was not necessarily to Lammers' benefit because she may, hypothetically, lose jail credit, does not constitute prejudice. Lammers did not receive any jail sentence from the trial court, and no probation was imposed. As a result, the possibility of loss of jail credit or consecutive jail time, when none was ordered, was not prejudicial.

{¶ 82} In summary, I believe that: (1) there was no apparent speedy trial violation; (2) even if there were a possible violation, when granting trial counsel the strong presumption of effectiveness, counsel may have reasonably concluded that the 75-day delay would not be charged to the City; (3) given such presumptions of effectiveness, counsel may have reasonably taken a global view, focused on treatment and compliance with the felony community control conditions rather than the misdemeanor charge that

was likely to be inconsequential in comparison; (4) there has been no showing that Lammers was prejudiced by counsels' decisions; and (5) even if, in hindsight, one disagrees with counsels' decision not to file a motion to dismiss, there are insufficient facts on the record to prove ineffective assistance of counsel.

{¶ 83} The age-old question of, "when in doubt, why not file the motion?" is not the legal standard of review.    This question belies the strong presumptions of effectiveness to which counsel is entitled, which appropriately insulate counsel from long-range, time-distant second-guessing.   That kind of hindsight musing is an invalid standard of review that can be asked in multiple situations in almost every case.

{¶ 84} In view of the above discussion, I would overrule Lammers' second assignment of error, join the majority to sustain the third assignment of error, and find the first assignment of error moot.   Accordingly, I would remand the case to the trial court rather than vacating the conviction.

{¶ 85} For these reasons, I very respectfully concur in part and dissent in part.


Copies sent to:

Robert F. Jacques
John K. Limoli
Hon. Margaret M. Quinn